UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 01-656-JBC**

**DX ASHANTA, ET AL.**                                                                                   **PLAINTIFFS,**

**VS.**                            **MEMORANDUM OPINION AND ORDER**

**LOUISVILLE GAS AND ELECTRIC CO., ET AL.**                                      **DEFENDANTS.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the court on the defendants' motion for summary judgment (R. 112) against plaintiff Edward O'Bannon. The court will deny the motion because the plaintiff has made a *prima facie* case for race discrimination and has produced sufficient evidence that would permit a reasonable fact-finder to reject the defendants' proffered, nondiscriminatory reason for ceasing its use of the plaintiff as a temporary supervisor.

**I.     Background**

The plaintiff, an African-American, works as a yard operator at the Mill Creek Power Plant of defendant Louisville Gas and Electric Co. ("LG&E"). In addition to serving as a yard operator, the plaintiff occasionally worked as a temporary supervisor at the plant. However, since July 15, 2001,[1] LG&E has not used the plaintiff as a temporary supervisor.

---

[1] The court assumes that the reference to July 15, 2002, on O'Bannon's EEOC position statement is an error because he filed the EEOC charge on July 10, 2002, and because he used the 2001 date in his answers to interrogatories.

O'Bannon, along with several other plaintiffs, initially filed this action in Jefferson Circuit Court, but the defendants removed it on November 13, 2001. O'Bannon is now the only remaining plaintiff; all others have either settled or had their claims dismissed for lack of prosecution. The defendants moved for summary judgment on January 18, 2009. After the motion was ripe, the court ordered the parties to supplement their memoranda with exhibits, and both parties complied.

## II.   Legal Analysis

The defendants are not entitled to summary judgment because the plaintiff has established a *prima facie* case for race discrimination and has produced sufficient evidence for a reasonable fact-finder to reject the defendants' proffered, nondiscriminatory reasons as pretext. In order to make out a *prima facie* case, the plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) a similarly situated person outside of the protected class was treated more favorably. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992), *Arendale v. City of Memphis, Tenn.*, 519 F.3d 587, 603 (6th Cir. 2008). The defendants contest only the last two requirements.

### A.   Qualification for Position

The plaintiff produced sufficient evidence to show that he was qualified for the temporary supervisor position. During the summer of 2001, the plaintiff served as a temporary supervisor while his supervisor, Mark Mucker, was attending his

annual training as an Army reservist, and the plaintiff apparently served as a temporary supervisor at some point after Mucker returned from that training. R. 127-4, at 6. The plaintiff also received a favorable performance evaluation on August 14, 2001, which noted that "[h]e's had a slight tardiness problem in the past but he's improved with this problem." R. 129-5, at 4. This proof of qualification is not negated by the defendants' proffered reasons: (1) that he was tardy on three separate occasions; (2) that he relieved a supervisor by calling him from the locker room instead of doing so face-to-face, as required by company policy; and (3) that he had general attendance problems.

For the first of those reasons, the defendants rely on the deposition testimony of Mark Mucker, the production leader in the yard and the plaintiff's supervisor. However, Mucker testified that "the one occasion that [the plaintiff] was supposed to be there, I called in, like, three separate times that morning, and he was not there." R. 127, at 4. This refers to one occasion, not three, and presents — at best — a question of fact as to the issues of qualification and pretext. Moreover, Michael Hudson, another employee allowed to serve as a temporary supervisor, was occasionally tardy. Presumably, then, tardiness did not disqualify O'Bannon from being a temporary supervisor.

As to the second reason — violation of company policy by relieving a shift supervisor without a face-to-face meeting — the incident in question occurred before Mucker left for two weeks of annual training as a reservist in the Army. R.

3

127-4, at 7, for one week of which Mucker designated the plaintiff to serve as a temporary supervisor. *Id.* The plaintiff's service as a temporary supervisor after the policy violation both supports his being qualified and undermines the legitimacy of the defendants' reason, thus also going to the "pretext" issue.

As to the third reason — attendance problems — it is unclear whether that issue arose before the defendants stopped using O'Bannon as a temporary supervisor. Mucker testified that the plaintiff's absenteeism problem started in "the latter part of 2001 and 2002." R. 127-4, at 9. Also, the plaintiff was not having absenteeism problems at the time that Mucker went to his annual training with the Army. *Id.* As with the above reason, this goes to pretext and does not undermine proof of O'Bannon's qualification to be a temporary supervisor.

### B. More Favorable Treatment of Similarly Situated Person

The plaintiff also showed that a similarly situated employee outside the protected class was treated more favorably, for at least part of the time period at issue. Potentially comparable employees must be "similarly situated in all respects" in order to be considered similarly situated. *Mitchell*, 964 F.2d at 583. This means that the plaintiff and the potentially comparable employee "must have dealt with the same supervisor and must have been subject to the same standards governing performance and discipline." *Noland v. Lorain Board of Education*, 869 F.Supp. 529, 531 (N.D. Ohio 1994) (citing *Mazzella v. RCA Global Communications*, 642 F.Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987)). The

plaintiff identified Michael Hudson as a potential comparable.  Hudson, who is white, works as a yard operator, like the plaintiff.  Mucker supervises Hudson and the plaintiff and has allowed Hudson to work as a temporary supervisor.  Mucker continued to use Hudson as a temporary supervisor after July 15, 2001, the date he stopped using the plaintiff as such.  Mucker testified that Hudson was allowed to continue serving as a temporary supervisor even though "[h]e's had a few instances where he'd be 10 or 15 minutes late."  R. 127-4, at 9; R. 129-5 at 4.  Because it is unclear when O'Bannon's alleged "attendance problems" occurred and whether they clearly distinguish him from Hudson, the court will construe this aspect of the facts in the light most favorable to O'Bannon.  O'Bannon and Hudson are similarly situated, in that they performed similar duties, shared a supervisor, and were occasionally tardy.  O'Bannon has thus demonstrated the last element of his prima facie case:  favorable treatment of a similarly situated employee outside the protected class, for at least a portion of the time period at issue.  Moreover, this proof could support a decision by a reasonable fact-finder that the proffered reasons are pretextual.  Thus, O'Bannon has satisfied all criteria for establishing a *prima facie* case of race discrimination and has supplied proof of pretext.

    Therefore, genuine issues of material fact exist and the defendants are not entitled to a judgment as a matter of law on the plaintiff's race discrimination claim.  Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (R. 112) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk and parties are directed to change the caption to reflect the only plaintiff who remains in this case.

**IT IS FURTHER ORDERED** that this matter is set for a settlement conference on December 15, 2009, at 1:30 p.m. with U.S. Magistrate Judge James Moyer, who will enter a separate order outlining the parties' obligations for that conference.

Signed on  September 29, 2009

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**